IN RE: ADMISSION OF MICHAEL A. AMENDOLA TO PRACTICE LAW IN NEVADA.

No. 26156

May 25, 1995                    895 P.2d 1298

*Michael A. Amendola,* In Proper Person, Goleta, California, for Petitioner.

*Ronald D. Alling,* Chair, Board of Bar Examiners, *C. A. Olendorff,* Bar Counsel, *Thomas A. Beatty,* Chair, Functional Equivalency Committee, Las Vegas, for State Bar of Nevada.

---

## OPINION

*Per Curiam:*

Petitioner Michael A. Amendola seeks a waiver of SCR 51(3), the rule requiring that all applicants for admission to practice law in this state must have received a bachelor of laws degree, or an equivalent degree, from a law school approved by the American

Bar Association (ABA). Petitioner concedes that the law school he attended, the San Fernando Valley College of Law (SFVCL), was not accredited by the ABA at the time he attended, and that it has never been accredited by the ABA. Petitioner contends that he is nonetheless entitled to a waiver of SCR 51(3) because the education he received at SFVCL was "functionally equivalent" to an education provided at an ABA-accredited school. *See, e.g.,* Bennett v. State Bar, 103 Nev. 519, 746 P.2d 143 (1987) (where the record as a whole demonstrated that education received at unaccredited law school was functionally equivalent to that provided at ABA-accredited school, waiver of SCR 51(3) was appropriate); SCR 51(7)(c).[1]

Specifically, petitioner contends that he is entitled to a waiver of SCR 51(3) because this court has previously concluded that SFVCL provided a "functionally equivalent" education at the time he graduated. We disagree. As the history of the admission of SFVCL graduates to the practice of law in this state illustrates, this court has never unequivocally held that SFVCL provided the functional equivalent of an ABA-accredited law school education.[2]

In the case of In re Nort, 96 Nev. 85, 605 P.2d 627 (1980), this court chronicled the reasoning behind prior decisions resolving petitions for waiver of SCR 51(3), including petitions from graduates of SFVCL. The discussion in *Nort* and this court's files reveal, for example, that a petition seeking a waiver of SCR 51(3) was filed in this court in 1978 by a graduate of SFVCL.[3] The petitioner in that matter contended that SFVCL was unaccredited solely because it was operated for profit, a ground unrelated to the quality of legal education. The Board of Bar Examiners of the State Bar of Nevada did not initially contest the petitioner's contention, and this court permitted the petitioner to sit for the

---

[1]SCR 51(7)(c) was repealed December 1, 1994, after this petition was filed in this court. The repealed provision was initially adopted by this court in 1991 to provide a procedure to address the ever-increasing number of petitions for waivers of the accreditation requirement of SCR 51(3). At the request of the Board of Governors of the State Bar of Nevada, however, this court repealed former SCR 51(7) because the procedures mandated by the rule had unduly strained the limited resources of the state bar. Henceforth, all petitions seeking a waiver of the accreditation requirement (SCR 51(3)) must be filed in this court in the first instance.

[2]In deciding this matter, we have taken judicial notice of pleadings and documentation filed in this court since 1978 by previous SFVCL graduates who have petitioned for waivers of SCR 51(3).

[3]This matter was identified in *Nort* as Docket No. 10721. *Nort,* 96 Nev. at 91, 605 P.2d at 632.

1978 Nevada Bar Examination, deferring a final decision on the merits of the petition until after the examination.

Only *after* the petitioner passed the examination did the Board seek to challenge his substantive allegation that SFVCL was not accredited *solely* because it was operated for profit. As this court observed in *Nort:*

> Under these circumstances, when [petitioner] had expended the considerable time and effort required to prepare for the bar examination, without any indication from the Board of Bar Examiners that opposition would consist of any more than an urging that the court strictly enforce [SCR 51(3)] . . . the court determined to proceed with granting [a waiver] of the rule.

*Id.* at 91-92, 605 P.2d at 632.

In 1979, two more graduates of SFVCL filed petitions for waivers of SCR 51(3), In re Abrahams, Docket No. 11718; In re Homick, Docket No. 11789. *Id.* at 92, 605 P.2d at 632. By 1979, however, this court had information "upon which to reevaluate, in a timely manner, the claims of the petitioners that their schools lacked ABA accreditation solely because of the operation of [ABA] Rule 202."[4] *Id.* at 93, 605 P.2d at 633. Although the ABA had agreed in 1977 to accept applications for provisional accreditation from proprietary schools, no proprietary school had submitted an application by April of 1979.[5] This court therefore concluded that the applicants had not demonstrated that their schools were unaccredited by the ABA solely by the operation of Rule 202. *Id.* at 93-94, 605 P.2d at 634. Rather, as this court observed in *Nort,* an order of this court granting the petitions of Nort and the SFVCL graduates in 1979 would have "represented an abandonment of the accreditation rule itself, by requiring a factual determination by this court, or the Board of Bar Examiners, as to the quality of the educational program offered by the law school attended by each petitioner." *Id.* at 94, 605 P.2d at 634.

We have consistently declined to engage in such factual determinations or to require the Board to do so. Instead, we have emphasized:

> In common with many other jurisdictions, we have elected to make use of the accreditation resources of the American Bar Association, in order to provide for an effective evaluation of an applicant's legal education without imposing an

---

[4]Rule 202 was the ABA rule that prohibited accreditation of proprietary law schools, *i.e.,* schools run for profit.

[5]Although SFVCL originally submitted an application, it later withdrew it.

impossible burden on the resources of this court or the Board of Bar Examiners. . . . On the other hand, we have been mindful that the ultimate responsibility is also ours to ensure that applicants are treated fairly, and that the rules do not operate in a manner inconsistent with the constitutional protections afforded those who seek to practice their chosen profession within this state.

*Id.* at 89, 605 P.2d at 630-631 (citations omitted); *see also* Bennett v. State Bar, 103 Nev. 519, 522, 746 P.2d 143, 145 (1987) ("[t]o evaluate an applicant's legal education effectively and expeditiously, without imposing an excessive burden on our resources, this court has elected to utilize the accreditation resources of the ABA"); former SCR 51(7)(a-c) (placed burden on applicant to demonstrate entitlement to a waiver "without imposing an excessive burden on the court or the bar").

In 1983, Jeffrey Fihn, a 1976 graduate of SFVCL,[6] petitioned for a waiver of SCR 51(3). Fihn had been a practicing Indiana attorney for six years, including four years as an Indiana Deputy Attorney General. Prior to his admission to practice in Indiana, Fihn had also clerked for an Indiana attorney. In his petition, Fihn contended, among other things, that the sole reason SFVCL was unaccredited was that it was operated for profit. Fihn's petition was supported by extensive documentation regarding SFVCL at the time he attended the school. Upon initial review of his petition, this court concluded that Fihn had made "a prima facie showing that his law school was denied accreditation, at the time of his graduation, solely for reasons unrelated to the quality of his education." Fihn v. State Bar, Docket No. 14809 (Order, June 15, 1983). The state bar filed a response, and this court granted Fihn a waiver of SCR 51(3), concluding that "the Bar ha[d] not adequately countered [Fihn's] prima facie showing." Fihn v. State Bar, Docket No. 14809 (Order Granting Petition, October 28, 1983); *see also* Bennett v. State Bar, 103 Nev. 519, 526 n.4, 746 P.2d 143, 148 (1987).

In 1992, Pamela Lawson, a 1979 graduate of SFVCL, petitioned for a waiver of SCR 51(3). Following a hearing, the Board of Bar Examiners recommended that this court grant her petition. As the Board noted, Lawson had graduated in the top six percent of her class at SFVCL, and had been a practicing California attorney for thirteen years at the time she petitioned for admission. In approving the Board's recommendation, this court concluded:

[6]As noted above, the ABA did not agree to accept applications for provisional accreditation from proprietary schools until 1977.

> [W]e are persuaded that [Lawson] made an unrebutted prima facie case that she received the functional equivalent of an education provided at an ABA-approved law school. *See* SCR 51(7)(c). In so concluding, we have accorded substantial weight to the findings and recommendations of the board regarding the quality of Lawson's legal education.[7]

In re Lawson, Docket No. 23196 (Order Granting Petition, June 4, 1993).

In 1994, Diane Riave, a 1979 graduate of SFVCL, petitioned for a waiver of SCR 51(3). Riave had been a practicing California attorney for fifteen years, had clerked for an attorney and a judge while in law school, and had taught general legal matters to adult education students. This court granted Riave a waiver of SCR 51(3). Admission of Diane Riave, Docket No. 25861 (Order Granting Petition, December 19, 1994). In granting the waiver, this court approved the recommendation of a committee of the Board of Bar Examiners that "the education [Riave] received from SFVCL, *as augmented by her experience,* is functionally equivalent to one provided by an ABA accredited law school." (Emphasis added.)

It is true that this court has in the past waived SCR 51(3) for a number of SFVCL graduates. It is also true, as petitioner observes, that this court has waived SCR 51(3) where "the evidence in the record as a whole and *our personal knowledge* of the operation of the Nevada School of Law" demonstrated that the education received at that local, unaccredited institution was nonetheless "functionally equivalent to that received at schools accredited by the ABA." Bennett v. State Bar, 103 Nev. 519, 525, 746 P.2d 143, 147 (1987) (emphasis added) (citing Nordgren v. Hafter, 789 F.2d 334 (5th Cir.), *cert. denied,* 479 U.S. 850 (1986)). Nonetheless, as we emphasized in *Bennett:*

> [W]e [have] not "created" a constitutional right to practice law without compliance with the state's admission requirements "merely because a wholly and expressly discretionary state privilege has been granted generously in the past." [*Nort,*] 96 Nev. at 95, 605 P.2d at 634 (*citing* Leis v. Flynt, 439 U.S. 438, 444 n.5 (1979)).

---

[7]The board of bar examiners found that Lawson demonstrated that the legal education she received at SFVCL in 1979 met or exceeded the education received by Fihn in 1976. As noted above, however, this court had previously concluded that Fihn made an unrebutted prima facie showing that SFVCL was unaccredited by the ABA in 1976 *solely because it was a proprietary school.* This court did not conclude that SFVCL provided Fihn with an education that was functionally equivalent to that provided at an ABA-accredited law school.

*Bennett,* 103 Nev. at 526, 746 P.2d at 148.

We have reviewed all of the documentation regarding SFVCL submitted by Fihn, Lawson, Riave, and petitioner in support of their respective petitions.[8] We are unable to conclude that any of these applicants have demonstrated conclusively that SFVCL—at any time—provided an education functionally equivalent to one provided by an ABA-approved school.

The purpose of the educational requirement embodied in SCR 51(3) is to promote high standards of competence among members of the State Bar of Nevada. In order to evaluate an applicant's legal education without imposing an excessive burden on the resources of this court or the bar, we have elected to make use of the accreditation resources of the ABA to evaluate an applicant's legal education. *Nort,* 96 Nev. at 89, 605 P.2d at 631. Our ruling in *Bennett* did not alter this fundamental policy of our admissions process. Rather, we have continued to strictly scrutinize petitions for waivers of SCR 51(3), and we have continued to accord great respect to the accreditation processes of the ABA. The limited resources available to this court and the bar simply do not permit the type of extensive, factual, functional equivalency investigation and findings implicated in proceedings of this nature.

This is especially so with regard to the belated allegations of functional equivalence stated in the instant petition. A factual resolution of petitioner's allegations would entail an extensive evaluation of an institutional education provided to petitioner at SFVCL seventeen years ago, long before the school merged with another institution. Under these circumstances, as has been our continuing practice, we must rely heavily on the accreditation resources of the ABA in reviewing this petition. Moreover, we will continue to rely on those resources in reviewing petitions for waivers of SCR 51(3) filed in this court by all unaccredited law school graduates. Additionally, because of the difficulties involved in evaluating the education provided at a law school which is no longer in existence, this court will not entertain any further petitions from SFVCL graduates seeking a waiver of SCR 51(3) based solely on the ground that SFVCL provided the functional equivalent of an ABA-accredited law school education.

Because this court has the ultimate responsibility to ensure that

---

[8]Cause appearing, we grant petitioner's motion to supplement his petition with additional documentation.

applicants are treated fairly and that any qualification for admission to the bar has a rational connection with the applicant's fitness or capacity to practice law, this court will consider waivers of SCR 51(3) where a petitioner can demonstrate that SCR 51(3) operates "in such a manner as to deny admission . . . arbitrarily and for a reason unrelated to the essential purpose of the rule."[9] *Nort,* 96 Nev. at 96, 605 P.2d at 635.

This is essentially the rule this court applied in reviewing the petitions filed by Fihn, Lawson, and Riave. This court concluded that, in addition to making "unrebutted prima facie showings" regarding SFVCL, both Fihn and Lawson had convincingly demonstrated that their SFVCL educations had been augmented by substantial subsequent legal experience. Fihn had clerked for a practicing attorney and had practiced law for six years. Lawson had practiced law for 13 years. With respect to Diane Riave, we concluded that her education, as augmented by her fifteen years of experience as a practicing California attorney, demonstrated that she had become the functional equivalent of an ABA-accredited law school graduate.

Although we may not have stated it explicitly at the time we granted the petitions filed by Fihn, Lawson, and Riave, we applied the rule originally stated in *Nort.* Specifically, we concluded that, through their unrebutted prima facie showings regarding SFVCL, *as augmented by their substantial subsequent law-related work experience,* they had demonstrated that they were functionally equivalent to ABA-accredited law school graduates, and that, therefore, the strict application of SCR 51(3) would deny them admission arbitrarily and for a reason unrelated to the essential purpose of the rule.

As noted, petitioner's contention that this court has previously concluded that SFVCL provided a "functionally equivalent" education is erroneous. Having rejected that contention, we need only note that petitioner has completely failed to demonstrate any reason why the application of SCR 51(3) will deny him admission arbitrarily and for a reason unrelated to the essential purpose of the rule. Unlike Fihn, Lawson, and Riave, petitioner has not shown that his law school education has been augmented by any law-related work or educational experience whatsoever. Petitioner graduated from SFVCL in 1978, where he compiled an

---

[9]This court may, however, from time to time continue to exercise its inherent authority to refer petitions for waivers of SCR 51(3) to the Board of Bar Examiners for factual findings regarding whether any particular petitioner may be denied admission by SCR 51(3) arbitrarily and for a reason unrelated to the essential purpose of the rule.

"average" grade point average. While in law school, petitioner worked in non-law related jobs. Since graduating from law school, petitioner has run several businesses and, for the last five years, travelled extensively. In marked contrast to the extensive legal experience which augmented the educations received by Fihn, Lawson, and Riave, petitioner has never been admitted to the practice of law in any state, has never clerked for a court or an attorney, has never attended any continuing legal education courses, and has never worked in any law-related field. Moreover, seventeen years have elapsed since petitioner graduated from SFVCL, and he failed the California State Bar Examination in 1992 and 1993.

We conclude, therefore, that petitioner has failed to demonstrate that the strict application of SCR 51(3) will deny him admission arbitrarily and for a reason unrelated to the essential purpose of the rule. Accordingly, we deny this petition for a waiver of SCR 51(3).